## MALLARY v. THE STATE.

1. The evidence authorized the verdict, and the court did not err in refusing a new trial.
2. Error is assigned because the court admitted certain letters in evidence over the objection of the plaintiff in error on tht ground that the handwriting of the letters was never identified by any one as that of the movant. The letters under the evidence in the record were properly admitted. A witness for the State testified that the letters which were offered in evidence had been handed by him to another person who did not testify in the case, but that they were given back to him the morning of the trial, and that he knew they were the same letters he had received from the defendant. The witness further testified that the movant while in jail admitted writing him some letters that he then had. "Since the defendant was arrested I received those letters there, in the United States mail. I spoke to the defendant here at court to-day; it was at jail. I did not show him those papers. I asked him did he write them, and he told me yes. I had them; he said he wrote them." This evidence was sufficient to authorize the court to let the letters go to the jury. See Smith v. State, 77 Ga. 705.
3. The second ground of the amended motion is as follows: "Because the court admitted in evidence, over movant's objection, testimony of O. C. Morgan, deputy sheriff of Houston County, "that he made movement [movant] show him his foot, having to remove shoe and found blood thereon; which movant insists was error." This assignment of error is insufficient, and will not be considered. It is well settled that a motion for new trial complaining of the illegal admission of evidence must show what objection was made to it when offered. Baker v. State, 97 Ga. 452 (2) (25 S. E. 341); Dunn. v. State, 99 Ga. 211 (25 S. E. 448); Moncrief v. State, 99 Ga. 295 (25 S. E. 735); Odom v. State, 102 Ga. 608 (29 S. E. 427).
4. Error is assigned upon the admission in evidence of certain testimony of Lige Fairfax that Isabella Taylor, the deceased, was an old woman unable to carry a bucket of water, over movant's objection that the same was irrelevant and was likely to prejudice the jury. This evidence was offered and was admissible for the purpose of ex-

plaining the fact, as shown by the evidence, as to why the witness accompanied the deceased from his house to the unoccupied tenant-house ·on the same farm.

5. The fifth ground of the motion for new trial complains that the court erred in charging the jury in the conclusion of the charge (having overlooked charging them as to the form of their verdict if they should find the defendant not guilty) while they were rising from their seats to go to the jury-room, and added: "Just a moment, gentlemen; of course, if you do not find the defendant guilty, the form of your verdict would be, we, the jury, find the defendant not guilty." The above charge is not open to the criticism that the use of the phrase "of course," under the circumstances and conditions under which it was said, was in itself an expression of opinion and prejudicial to movant.

6. The sixth, seventh, and eighth grounds of the motion for new trial complain of the admission in evidence by the court of confessions, and of the failure of the court to exclude the same. The evidence of these confessions is not set out in these grounds. For this reason these grounds present no question for decision by this court.

7. The ninth ground of the motion is a mere repetition of the general ground that the verdict is contrary to law.

8. The tenth ground of the motion for new trial is expressly abandoned, and will not be considered.

9. The court did not err in overruling the motion for new trial.

                    No. 3608.  OCTOBER 10, 1923.

Murder. Before Judge Mathews. Houston superior court. October 24, 1922.

*Vining & English,* for plaintiff in error.

*George M. Napier,* attorney-general, *Charles H. Garrett,* solicitor-general, and *Seward M. Smith,* asst. atty.-gen., contra.

HILL, J. Lucius Mallary was indicted for the murder of Isabella Taylor, and the jury trying him returned a verdict of guilty, without recommendation; and the defendant was sentenced to be hanged. He made a motion for a new trial, which was overruled, and he excepted. The defendant was convicted upon circumstantial evidence mainly. The evidence tended to show that the deceased was killed on December 26, 1921, and that the weapon with which she was killed was a blunt instrument, or round stick, or other weapon of like character. The deceased was found in a vacant house which she was cleaning up preparatory to living therein. She had been struck on the head three or four times, and her head was badly mutilated and crushed. The killing took place in an unoccupied tenant-house about one hundred and fifty yards from an occupied dwelling in which a witness for the State by the

name of Lige Fairfax lived. The deceased had borrowed a tub, bucket, broom, and scrubbing-mop from Fairfax, and had drawn a bucket of water from his well, and he assisted her in carrying the water and utensils to the tenant-house, where he left her. There was evidence showing tracks in the field adjacent to the house leading from a branch to the unoccupied house, and tracks going back to the branch; the tracks were those of a person who walked to the house and ran away from the house, and made by a person who had on one foot a shoe which had been tied at the end with a piece of wire, and the tracks indicated that the large toe of the person wearing the shoe extended over the end of the sole of the shoe and that the toe was protected by a cloth or rag wrapped around the foot. The other track was made by a shoe badly worn, which evidently had a string tied around the middle of the shoe and over the instep, which made an impression in the ground. The defendant, Mallary, was arrested the day after the killing, six or seven miles from the scene of the killing. At the time of his arrest the defendant had on new shoes. He told the officers, in response to questions from them, that he had thrown his old shoes away in a certain cotton-field on a certain plantation, and went with the officer and assisted him in locating the old shoes. The old shoes were of the kind that could make the peculiar tracks in-dicated above, one of them had a wire attached, fastening a part of the sole of the shoe to another part of the shoe, and was twisted at the end and turned down so that the wire would make a peculiar impression on the edge of the track, and the sole of the same shoe was so badly worn that the large toe of the wearer would project. In this shoe a piece of cloth was found folded and arranged so as to indicate that the wearer used it to wrap around his foot. A part of the cloth was worn by its coming in contact evidently with the ground when walking, and was bloody. At the scene of the killing there were tracks made evidently by the murderer in the blood of the deceased, showing that the projecting toe covered by the cloth had come in contact with the pool of blood.

The defendant when arrested had bloodstains on the sole of his foot near the ball of his big toe, and had splotches of blood on the front of his overalls and on the front of his leg, and also the impression of five fingers in blood on that portion of the overalls covering the seat of his overalls. The defendant explained to the

arresting officer that he made this print by wiping his hand on that part of his overalls after he had washed his hands. At the time of his arrest the defendant had on the bloody overalls and a gray sweater coat. In answer to the sheriff, who asked the defendant about his new shoes, the defendant explained that his wife had given him the money with which to buy the shoes, and subsequently said that one Lucius Pool gave him the money with which to buy them. The sheriff left the defendant and asked Pool about what the defendant had said, and when he returned the sheriff informed the defendant that his wife and Pool denied giving him any money. The sheriff took the defendant, in company with the deputy sheriff and Dr. Pearce, to the scene of the homicide, and the sheriff remarked to the defendant: "Lucius, this is a pretty bad thing to see, all of this blood," and the defendant replied in the affirmative. The sheriff then asked: "I wonder who did it?" At first the defendant denied any knowledge as to who committed the crime. The sheriff called the defendant's attention to the fact that the people to whom the defendant referred the sheriff for information about the new shoes had failed to corroborate his statement. There was no crowd gathered at this time, and nothing to indicate to the defendant that he was in danger of bodily harm from anybody. The defendant said: "Look around the house and see if there are any negroes around here, and I will tell you all about it." The sheriff opened the door and there were two negroes in the yard. The sheriff ordered them away, and they left, and when he came back he said to the defendant: "Now, Lucius, if you want to tell about it there is no one here except us, and you need not be afraid, as we are here to protect you from any harm." The defendant then told the sheriff and the other persons present that he killed Isabella Taylor by striking her several times with a large stick. He said that he killed her because she had accused him of stealing chickens, and that he could not stand the idea of being called a rogue and decided to kill her. He offered to show the sheriff where the stick was. The sheriff went with him, and he took a course which the tracks leading from the house across the field into the swamp had taken, and undertook to point out the place where the stick was thrown. The place was in a thick swamp and in the night-time, and the officers could not find the stick. A witness for the State, Lucius Pool, testified that he received three

letters through the United States mail, signed in the defendant's name, and requesting Pool to come to court and to secure other friends to come to court and testify to facts which would prove an alibi for the defendant. The first letter asked Pool to testify that the defendant was at Pool's house from 12 o'clock until sundown on the day of the killing. The other two letters asked Pool and his friends to testify that the defendant was with them in a certain field a large part, if not all, of the day on which the homicide occurred. One of the letters stated in effect that unless the parties written to came to court and testified for the defendant, " he would be burned," and the last letter offered to compensate Pool and his friends for giving this testimony. Pool testified that he was not altogether illiterate but could not read all that was in the letters, and that on the day of the trial he talked to the defendant in jail about the letters, and the defendant told him that he had sent them to him. The letters were in different handwriting. On the trial. Pool testified that he did not see the defendant on the day of the homicide, and had not seen him since Thursday prior to the Monday of the killing. Another witness testified that he passed by the house where the killing occurred, on the afternoon of the killing, and saw a man with a gray sweater coat buttoned in front, with blue overalls on, in the door of the vacant house, and the man concealed himself behind the half-closed door as the witness passed along the road by the house.

The above is substantially the evidence relied on by the State for the conviction of the defendant. The defendant offered no evidence in his own behalf, but made a statement in which he denied that he did the killing or that he knew anything about it, and claimed that the blood which appeared on his overalls was from three or four rabbits which he had killed, and that he cut the sack off of his hunting coat and split it open and wrapped his foot up in it and went to Elko and bought a pair of shoes, etc. We are of the opinion that the evidence set forth above was sufficient to authorize the jury to find a verdict of guilty against the defendant.

Headnotes other than the first require no elaboration.

*Judgment affirmed. All the Justices concur.*